IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| PCA-CORRECTIONS, LLC., d/b/a PCA Pharmacy | : | Case No. 1:20-cv-428 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AKRON HEALTHCARE LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING WITHOUT PREJUDICE MOTION FOR DEFAULT JUDGMENT**
**(Doc. 24)**

This case is before the Court on Plaintiff's motion for default judgment. (Doc. 24.)

On May 27, 2020, Plaintiff PCA-Corrections, LLC, doing business as PCA Pharmacy, filed this action against nineteen defendants. (Doc. 1.) One of those defendants, Boulder Healthcare LLC, was served on June 15, 2020, making its answer due July 6, 2020. (*See* Minute Entry at Doc. 6.) Boulder Healthcare failed to respond to the complaint. On July 24, 2020, PCA applied to the clerk for an entry of default. (Doc. 19.) The Clerk entered default three days later. (Doc. 20.) On October 5, 2020, PCA filed a motion for default judgment against Boulder Healthcare. Shortly afterwards, this matter was stayed for several months so that the parties could attempt mediation. Since mediation proved unsuccessful, this matter has returned to the undersigned district judge's docket. (*See* Minute Entry at 1/11/2021.)

"When a party against whom a judgment for affirmative relief is sought has failed

1

to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the entry of default, a party may apply for default judgment. Fed. R. Civ. P. 55(b). The entry of default establishes the well-pleaded allegations as true. *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *In re Fam. Resorts of Am., Inc.*, 972 F.2d 347 (6th Cir. 1992). But, even after entry of default, the decision to grant a default judgment is within the Court's discretion. *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013); 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure §§ 2681, 2685.

Importantly, if a defendant is found to be bound to default judgment, that does not resolve the issue of damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A default judgment only establishes the defendant's liability—the plaintiff must establish the extent of the damages. *Antoine*, 66 F.3d at 110.

Here, in support of its motion for default judgment, PCA attaches the affidavit of Brian Smith, Vice President of Finance. Smith avers that, in exchange for the goods and services PCA provided, Boulder Healthcare owes PCA a principal balance of $2,265,718.51, not including interest, late fees, and attorney's fees and costs. (Doc. 24-1 at ¶ 12.) Furthermore, according to Mr. Smith, interest has accrued at a contractual rate of 1.5% per month on the unpaid invoices. As of September 30, 2020, the accrued interest

was $189,298.52.  According to him, interest continues to accrue at a rate of 1.5% per month on the unpaid invoices.  (*Id.* at ¶ 13.)  Boulder Healthcare's termination of the agreement resulted in lost profits to PCA totaling $773,613.00.  (*Id.* at ¶ 22.)  Thus, on Smith's account, the total amount owed to PCA, as of September 30, 2020—not including attorney's fees and costs—is $3,228,630.03.  (*Id.* at ¶ 23.)  Mr. Smith further avers that PCA is entitled to recover its reasonable attorney's fees and costs associated with collecting these past due amounts.  (*Id.* at ¶ 24.)  In addition to Smith's declaration, PCA attaches several charts.  The charts contain names of various nursing facilities affiliated with Boulder Healthcare, along with several monetary figures.

It is unclear, however, where these numbers come from.  True, some of the numbers claimed in the motion for default judgment also appear in the charts.  (Doc. 24-4 at Page ID 312.)  But the origin of the charts themselves remains a question.  They have no letterhead indicating who made them.  They are not invoices or correspondence.  They are simply charts that appear to reflect PCA's internal efforts to record past due invoices.  In this form, the evidence is inconclusive.  *Antoine*, 66 F.3d at 110.

The charts present extensive lists of amounts due connected with various business entities, but without any supporting documentation showing that those sums actually stem from unpaid invoices.  Nor does the evidence show that the unpaid invoices add up to the principal balance PCA claims.  The numbers are presumably based on something, but on what, the Court cannot tell.  Since the claimed interest derives from the claimed principal balance, that number too stands on unsolid ground.  As for the lost profits, nothing supports the $773,613.00 figure, beyond Smith's averments.  An affidavit setting

3

out these unliquidated damages, but bare of any supporting documentation, does not sufficiently prove the amount of damages. *Id.* The fact that some of the sums in the exhibits match the sums claimed in the motion for default judgment does not prove that they are the actual damages.

In light of the inadequacy of the evidence used to support the motion for default judgment, the Court **DENIES** the motion without prejudice.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND