IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| PCA-CORRECTIONS, LLC, d/b/a PCA Pharmacy, | : | Case No. 1:20-cv-428 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AKRON HEALTHCARE LLC, et al., | : | |
| | : | |
| Defendants. | : | |

ORDER DENYING MOTION FOR ATTACHMENT (Doc. 26) AND TERMINATING
AS MOOT MOTIONS TO EXCLUDE (Doc. 45) AND FOR HEARING (Doc. 49)

Before the Court is Plaintiff's motion for attachment (Doc. 26) and the motion to exclude (Doc. 45) filed by the seventeen skilled nursing facilities ("Facilities") and Boulder Operations Holdings LLC (collectively, "Defendants").

**FACTS**

Plaintiff PCA-Corrections, LLC, doing business as PCA Pharmacy, provides pharmacy goods and services to residents of long-term care and skilled nursing facilities. PCA alleges that it had a services agreement with Defendants and that it provided pharmacy-related goods to Defendants. According to PCA, Defendants failed to pay the goods and services PCA provided. In its motion for attachment, it claims that Defendants have failed to pay $2,265,238 worth of goods and services.

**LAW AND ANALYSIS**

Rule 64, Federal Rules of Civil Procedure, provides that every remedy that is

1

available under the law of the state where the court is located, having to do with seizing property to satisfy a potential judgment, is also available in federal court. Fed. R. Civ. P. 64(a). That includes the remedy of attachment. Fed. R. Civ. P. 64(b). When resolving questions of prejudgment attachment, federal courts in Ohio apply R.C. 2715. *Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc.*, 787 F. Supp. 766, 768 (S.D. Ohio 1992).

Attachment is an extraordinary remedy. *Data Processing Scis. Corp. v. Lumenate Techs., LP*, No. 1:16-CV-295, 2016 WL 3144117, at *3 (S.D. Ohio June 6, 2016). A plaintiff seeking attachment against a defendant's property for the recovery of money must base its right to attachment upon certain specified grounds laid out in R.C. 2715.01(A). In order to attach a defendant's property, a plaintiff must support its motion with probable cause by showing that it is likely the plaintiff will obtain a judgment against the defendant. *E.g.*, R.C. 2715.011(A); *Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2015 WL 12672728, at *2 (S.D. Ohio July 24, 2015). The motion for attachment must include an affidavit, which must set forth the nature and amount of the plaintiff's claim; the facts that support at least one of the grounds listed in R.C. 2715.01; a description of the property sought and its approximate value; and, to the best of the plaintiff's knowledge, the location of the property. R.C. 2715.03.

PCA offers several possible grounds for attachment under R.C. 2715.01(A): (1) defendants are foreign corporations; (2) defendants are not residents of Ohio; (3) defendants intended to assign, remove, or dispose of property with the intent to defraud creditors; and (4) defendants have fraudulently or criminally contracted the debt underlying this lawsuit.

2

For the reasons below, the Court denies PCA's motion for attachment.

**A. Jurisdiction**

As an initial point, this Court lacks jurisdiction over the piece of property PCA seeks to attach. PCA identifies an account held by Defendants at CNB Bank. It claims that CNB Bank, under the trade name Erie Bank, is licensed to do business in Ohio, has a registered agent in Ohio, and has branches in Ohio. So, in PCA's view, funds in that bank account are within this Court's jurisdiction.

Defendants disagree, claiming that Ohio's attachment statute only applies to property within Ohio's territorial boundaries. They maintain, on support of a declaration of counsel, that all of CNB Bank's branches are in Pennsylvania. None are in Ohio. (Doc. 42 at 5; Doc. 43 at ¶ 2.)

Defendants are correct. Ohio's attachment statutes "do not apply to assets located outside of Ohio." *EBSCO Indus., Inc. v. Lilly*, 840 F.2d 333, 336 (6th Cir. 1988). Although, for garnishment purposes, "a debt has no fixed situs and may be reached in any jurisdiction in which the person owing it may be found," *Ohio Loan & Disc. Co. v. Siemen*, 142 Ohio St. 384, 386, 52 N.E.2d 525, 526 (1943), Ohio courts draw a distinction between the contexts of garnishment and attachment proceedings, *see QSI-Fostoria DC, LLC v. Gen. Elec. Cap. Bus. Asset Funding Corp.*, No. 3:02CV7466, 2005 WL 81902, at *3 (N.D. Ohio Jan. 14, 2005). Ohio federal courts lack jurisdiction to order attachment over assets that are not located in the state. *E.g., NCR Corp. v. Feltz*, 983 F.2d 1068 (6th Cir. 1993); *Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp. 2d 539, 549 (N.D. Ohio 2003); *Commodigy OG Vegas Holdings, LLC v. ADM Labs*, No. 1:19-CV-01382, 2019 WL 6716457, at *2 (N.D. Ohio Dec.

10, 2019); *Concheck v. Barcroft*, No. 2:10-CV-656, 2010 WL 4117480, at *2 (S.D. Ohio Oct. 18, 2010). And, to the extent PCA argues that Erie Bank has locations in Ohio, that is irrelevant: PCA seeks to attach a CNB Bank account, not an Erie Bank account. Because PCA identifies no assets located in Ohio, this Court lacks jurisdiction to order attachment.

### B. Grounds for Attachment

Here, even if PCA were able to point to property that was within this Court's jurisdiction to attach, it fails to articulate a statutory ground for attachment.

*Foreign corporations*. PCA invokes R.C. 2715.01(A)(1), which provides as grounds for attachment, "[e]xcepting foreign corporations which by compliance with the law therefore are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation." R.C. 2715.01(A)(1).[1] Boulder Operations is a Delaware limited liability company whose individual members are residents of New York. The Facility Defendants are Ohio limited liability companies whose individual members live in New York. (*See* Doc. 26 at 6.) PCA claims that those facts mean that Defendants are foreign corporations for purposes of attachment.

Defendants claim that none of them is subject to attachment under R.C. 2715.01(A)(1), because they are limited liability companies and subsection (1) only applies

---

[1] This Court has recently noted that the purpose of the exception in R.C. 2715.01(A)(1) is to avoid a conflict with R.C. 1703.20. *Hatmaker v. Papa John's Ohio LLC*, No. 3:17-CV-00146, 2021 WL 99346, at *7 (S.D. Ohio Jan. 12, 2021), *report and recommendation adopted*, No. 3:17cv146, ECF Doc. 175 (S.D. Ohio Feb. 2, 2021). R.C. 1703.20 provides that, in some cases, foreign entities are exempt from attachment: "A foreign corporation holding an unexpired and uncanceled license under sections 1703.01 to 1703.31 . . . shall not be subject to process of attachment under any law of this state on the ground that it is a foreign corporation nonresident of this state." R.C. 1703.20. *See also Celerity Q, Ltd. v. CSDC Sys., Inc.*, No. C2-09-CV-377, 2009 WL 4111052, at *2 (S.D. Ohio Nov. 19, 2009). Defendants do not, however, argue that they hold such a license.

4

to corporations. Strict as this construction is, this Court has applied it to this statute before. *Data Processing Scis. Corp. v. Lumenate Techs., LP*, No. 1:16-CV-295, 2016 WL 3144117, at *2 (S.D. Ohio June 6, 2016). In *Data Processing*, Judge Black, "in an abundance of caution, and absent case law authority," strictly construed the statutory language in R.C. 2715.01(A)(1) and declined to embrace the argument that that subsection applies to any business entity besides a corporation. *Id.* This Court has not found a decision that departs from *Data Processing*'s reasoning so it will apply it here. Since Defendants are limited liability companies, and R.C. 2715.01(A)(1) is limited to corporations, PCA fails to establish a ground for attachment as to any of the defendants under R.C. 2715.01(A)(1).

*Not residents of Ohio.* PCA also claims a ground for attachment under R.C. 2715.01(A)(2), for circumstances in which a defendant is not a resident of Ohio. As noted above, Boulder Operations is a Delaware limited liability company, the Facility Defendants are Ohio limited liability companies, and all of their individual members live in New York. PCA claims that this means Defendants are not residents of Ohio for purposes of attachment.

"Unlike a corporation, 'the citizenship of [a limited liability company] for purposes of the diversity jurisdiction is the citizenship of its members.'" *Delphi Auto. Sys., LLC v. Segway Inc.*, 519 F. Supp. 2d 662, 665 (E.D. Mich. 2007) (quoting *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)). *See also Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994). Under that rule, Defendants have citizenship in New York. Having citizenship in a state other than Ohio, however, does not necessarily mean that the Ohio limited liability companies are not also

residents of Ohio.

Indeed, Defendants point out that the Facility Defendants are organized under the laws of Ohio and they are located in Ohio. (Doc. 42 at 11-12.) They are registered with the Ohio Secretary of State and subject to service of process through registered agents in Ohio. (*Id.*; Doc. 43.) In this situation, again, *Data Processing* charts the course the Court takes now: Registration with the Ohio Secretary of State and being subject to service of process in Ohio suffice to qualify a party as a "resident" of Ohio for purposes of attachment. *See Data Processing*, 2016 WL 3144117, at *2 (citing *Gen. Motors Corp. v. Fockler*, 600 N.E.2d 338, 342 (Ohio App. 1991)). Accordingly, R.C. 2715.01(A)(2) does not provide PCA grounds for attachment as to the Facility Defendants.

The same holds true for Boulder Operations, but for a different reason. Defendants concede that Boulder Operations is not an Ohio resident, but claim instead that prejudgment attachment is inappropriate, under R.C. 2715.01(B). That statute provides that "attachment shall not be granted on the ground that the defendant is . . . not a resident of this state for any claim, *other than a debt or demand arising upon contract, judgment, or decree.*" R.C. 2715.01(B) (emphasis added). Defendants argue that PCA has not alleged a contract claim against Boulder Operations and, for that reason, R.C. 2715.01(B) forecloses its nonresident status as a ground for attachment.

Defendants are correct. Although PCA alleges a claim of tortious interference with contract against Boulder Operations, the exception in R.C. 2715.01(B) requires an alleged debt or demand *arising from a contract*. *See Forefront Machining Techs., Inc. v. SARIX SA*, No. 3:19-CV-383, 2020 WL 804858, at *6 (S.D. Ohio Feb. 18, 2020). A claim for tortious

6

interference with contract arises from a defendant's alleged conduct—not the contract itself. The fact that the tortious conduct allegedly involved interference with a contract does not mean that PCA's demand *arises upon* the contract. Consider that relief would depend on satisfying the elements of the tort, not application of a contract. To permit a tort to fit within the exception of R.C. 2715.01(B) would be to misread the plain meaning of the words constituting that exception. And, here, PCA's claim for relief does not arise upon the contract—it arises upon allegedly tortious conduct, which is not one of the exceptions listed in R.C. 2715.01(B). Thus, R.C. 2715.01(B) precludes using nonresident status as a ground for attachment as it relates to Boulder Operations.

For these reasons, R.C. 2715.01(A)(2) provides no grounds for attachment as to any of the defendants.

*Intent to defraud.* PCA next claims that it has grounds to attach based on Defendants' alleged fraudulent intent. Its supporting evidence, however, comes almost exclusively by way of complaints filed in other cases. PCA marshals these other complaints in an attempt to paint a picture of widespread bad acting on the part of Defendants. These complaints are the target of a motion to exclude filed by Defendants (Doc. 45); PCA has not responded to it. For purposes of this case, the allegations in the complaints constitute inadmissible hearsay. *Morford v. Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 16 (11th Dist.). The declarations were not made while testifying at a trial in this matter or a hearing, and PCA has attempted to offer the evidence to prove the truth of the matters asserted in the statements. Fed. R. Evid. 801(c). So the Court will not consider the complaints PCA uses to support its argument.

That leaves PCA's argument about deficiencies found in the facilities. According to PCA, citing public data, the number of deficiencies found in the facilities increased after Defendants obtained control of them. PCA argues that this could only mean that Defendants' "crystal clear" intent was to "extract as much money as they can from these facilities . . . and leave all of the creditors holding the bag." (Doc. 26 at 12.)

That intent does not come across so clearly as PCA suggests. PCA may seek to prove that theory as litigation proceeds, but at this stage, it is simply too speculative to establish that Defendants have engaged in a scheme to defraud creditors. For that reason, PCA fails to establish a ground for attachment under R.C. 2715.01(A)(3), (6), or (9).

*Fraudulently or criminally contracted the debt.* Lastly, PCA contends that grounds for attachment exist under R.C. 2715.01(A)(10), claiming that Defendants have "fraudulently or criminally contracted the debt, or incurred the obligations for which suit is about to be or has been brought." It points to numerous Medicare provisions to which Defendants are subject and proceeds to argue that "it is plain" that Boulder Operations "bought [its] way into a controlling interest . . . with no intention whatsoever to pay *any* of the bills incurred . . . knowing that they would receive millions of dollars in Medicare reimbursement payments." (Doc. 26 at 14.) But again, PCA simply says these things without offering any actual evidence in support. Such conclusory argumentation is insufficient to establish grounds for attachment under R.C. 2715.01(A)(10).

### C. Probable Cause

The third independent reason the Court must deny the motion for attachment is because PCA fails to establish probable cause.

8

Defendants argue that Boulder Operations is not a party to the contract in question. They state that, based on the complaint, Boulder Healthcare and Boulder Operations are separate entities—Boulder Healthcare is an Ohio limited liability company and Boulder Operations is a Delaware limited liability company. (Compl. at ¶¶ 20, 21.) And, pointing to the agreement, they maintain that Boulder Healthcare—not Boulder Operations—is a party to the contract. (*See* Doc. 26-15 at Page ID 617.)

In reply, PCA surmises that it has "become clear" that "Boulder Healthcare" does not refer to the particular entity of Boulder Healthcare LLC, but instead is a trade name Defendants use to encompass all of their operations, including Boulder Operations. It claims that Defendants disregard the boundaries between Boulder Healthcare and the other entities. For instance, Boulder Healthcare terminated its agreement with PCA, but did so through general counsel for Boulder Operations and on Boulder Operations letterhead. (*See* Doc. 46-5.) PCA claims that this blurring of the lines deprives Boulder Operations of the benefit that the two separate Boulder companies' legal structures may have otherwise provided.

At this stage, PCA's theories are simply too tenuous and lacking legal support for this Court to find that PCA is likely to obtain a judgment against Boulder Operations. Boulder Healthcare is the party to the contract. (Doc. 26-15 at Page ID 617.) PCA does not present any evidence to support its theory that Boulder Operations is or may also be a party to the contract. The fact that Boulder Healthcare terminated the relationship with PCA, through counsel on Boulder Operations letterhead, does not mean that Boulder Operations—a separate business entity—was also party to the contract. (*See* Doc. 46 at

5.) Accordingly, on the current record, PCA is unable to show probable cause as it relates to Boulder Operations. *See Data Processing*, 2016 WL 3144117, at *3.

Nor is PCA able to show, on the current record, that it is likely to obtain a judgment against the Facility Defendants. It is true that the preamble to the agreement states that the agreement is "made and entered . . . by and between Boulder Healthcare . . . and the facility locations listed in Section 3.2 . . . and PCA Corrections," and that Section 3.2 lists the Facility Defendants. But the two signatures on the agreement are revealing. One belongs to Jordan Prozialeck, on behalf of PCA. The other belongs to Paul Bergsten, on behalf of Boulder Healthcare—and not on behalf of the Facility Defendants. PCA has not provided this Court with evidence amounting to probable cause that Paul Bergsten has the authority to bind the Facility Defendants. So the extent to which the Facility Defendants are subject to the agreement, if it all, remains a question. Accordingly, PCA has not shown that the present record is likely to guarantee a judgment against the Facility Defendants.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion for attachment (Doc. 26) and **TERMINATES AS MOOT** the motions to exclude (Doc. 45) and for hearing (Doc. 49).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND