**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| PCA-CORRECTIONS, LLC., d/b/a PCA Pharmacy, | : | Case No. 1:20-cv-428 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AKRON HEALTHCARE LLC, et al., | : | |
| | : | |
| Defendants. | : | |

_____

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH
SUBPOENA (Doc. 48)**
_____

This case is before the Court on Defendants' motion to quash a subpoena duces tecum served on a nonparty.[1] (Doc. 48.)

**FACTS**

On September 25, 2020, Plaintiff PCA-Corrections served its First Set of Requests for Production on most defendants. Those requests sought auditors' reports, audited and unaudited financial statements, aged payable journals, and various tax documents. (Doc. 48-2 at Pg. ID 2088-89.) Months later, on February 11, 2021—but before Defendants' responses to the first set of requests was due (*see* Doc. 38)—PCA sent counsel for Defendants a Notice of Intent to Serve Subpoena on RW Corwin & Company, Inc. ("Corwin"), Defendants' accountant and a nonparty. Many of the requests to Corwin

_____

[1] For the purposes of this Order, "Defendants" refers to every defendant except for Boulder Healthcare LLC.

1

overlapped with the earlier requests to Defendants and included auditors' reports, audited and unaudited financial statements, accounts payable journals, and various tax documents. PCA also included a request for records of "financial transactions between any of the Defendants, including, but not limited to, payment records, cash receipts, accounting records, payroll records, canceled checks, and tax returns or related tax documents prepared by you on any of Defendants' behalf from January 1, 2018 to present." (Doc. 48-1 at Pg. ID 2081-82.) The next day, counsel for Defendants emailed counsel for PCA, taking the position that the subpoena impermissibly sought Defendants' confidential and/or privileged information. She asked PCA's attorney to withdraw the subpoena. That request was denied. (Doc. 48-3.)

Defendants brought the instant motion to quash the subpoena to Corwin.[2] Defendants make three arguments. First, they claim they have standing to move to quash the subpoena. Second, they contend that the subpoena is a fishing expedition seeking irrelevant documents. Third, in their review, the subpoena is duplicative of party discovery and amounts to an end run around previously served and objected-to discovery.

**ANALYSIS**

## A. Defendants have standing.

Rule 45(d)(3)(B) of the Federal Rules of Civil Procedure permits a court to quash

---

[2] Although the undersigned district judge's standing order for civil cases does not permit discovery motions without first exhausting specific procedures, § II.A., the Court entertained limited briefing on the motion to quash. *See* 3/24/2021 Entry.

or modify a subpoena if responding to the subpoena would disclose certain confidential information. Generally, a party has no standing to challenge a subpoena to a nonparty, absent a claim of privilege. *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002). So for a party to have standing to quash subpoenas served on nonparties, that party must identify some personal right or privilege. *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (6th Cir. 1997) (citing 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995)).

Requests for personal bank records and personal and business tax records may constitute matters in which a party has personal rights and privileges. *See Hunter v. Shield*, No. 2:18-CV-1097, 2020 WL 6484055, at *12 (S.D. Ohio Nov. 4, 2020); *Hackmann v. Auto Owners Ins. Co.*, No. CIV.A. 2:05-CV-876, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009). And, here, PCA has requested that Defendants' accountant produce information pertaining to their tax records, financial transactions, and other commercially sensitive documents. This suffices to give Defendants standing to move to quash the subpoena served on the nonparty accountant. *E.g.*, *Hunter*, 2020 WL 6484055, at *12.

**B. Plaintiff's Rule 45 subpoena was largely improper.**

A subpoena duces tecum must be reasonable, specific, and the requested documents must be relevant. *United States v. Justice*, 14 F. App'x 426, 433 (6th Cir. 2001). The party seeking to quash a subpoena under Fed. R. Civ. P. 45(d)(3) bears the ultimate burden of proof. *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Decisions on a motion to quash are left to the district court's discretion. *Id.* (citing *United States v. Hughes*, 895 F.2d 1135, 1145 (6th Cir. 1990)).

3

Defendants argue that the subpoena to their accountant constitutes an end run around discovery previously issued to them. And, more than that, it is duplicative. They rehearse an uncontradicted timeline of events: In September 2020, PCA served its First Set of Requests for Production of Documents on Defendants, seeking, among other things, tax returns, auditors' reports, financial statements, and payable journals. Several months later, on February 11, 2021, before Defendants' responses to those requests were due, PCA notified defense counsel that it would serve a subpoena on Corwin seeking substantially the same materials. About a week later, Defendants objected to much of the direct discovery. (Doc. 48-2.) Notably, PCA later served, in April 2021, the *first set* of discovery requests to one of the defendants, Boulder Operations. In other words, PCA subpoenaed tax and financial documents from the nonparty accountant before it even sent the first set of requests to one of the defendants and before the deadline for any responses had expired. (Doc. 55-1.)

Rule 26(b)(2)(C) provides that a court must limit the extent of discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The standard vehicle for obtaining documents belonging to a party is Rule 34, rather than subpoenaing them from a nonparty under Rule 45. *See Stokes v. Xerox Corp.*, No. 05-CV-71683-DT, 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006) (quoting 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2204 at 365 (2nd ed. 1994)). Rule 45 may apply to both parties and nonparties, but at least one court in this circuit has recognized that parties should not resort to Rule 45 when it circumvents the requirements and

4

protections of Rule 34 for the production of documents. *Id.*

In *Stokes*, the court addressed circumstances similar to those here. The plaintiff issued a subpoena to a nonparty employee of the defendant, seeking certain documents. The defendant moved to quash the subpoena. It argued that the plaintiff should have proceeded under Rule 34 instead of Rule 45. Since the subpoena sought to disclose records belonging to the defendant, the court treated the Rule 45 subpoena as an attempt to subpoena the records of a party, as opposed to a nonparty. That finding had consequences for what rule applied: "Discovery from a party, as distinct from a nonparty, is governed by Rule 34, not Rule 45." *Id.* (quoting 7 Moore's Federal Practice § 34.02[5][e] (3d ed.)). The court found that the majority view was that a party "should not be permitted to circumvent the requirements and protections of Rule 34 by proceeding under Rule 45 for the production of documents belonging to a party." *Id.* Logically, then, it held that the plaintiff's attempted use of Rule 45 to obtain documents belonging to the defendant amounted to an inappropriate effort to circumvent the discovery rules. *Id.*

Apply these procedural rules to the facts here. The starting point is the Court's obligation under Rule 26(b)(2)(C) to limit the extent of discovery when it finds that the discovery sought is unreasonably cumulative or duplicative. Rule 34 provides parties the avenue to request production of documents belonging to a party. *Elvis Presley Enterprises, Inc. v. City of Memphis, Tennessee*, No. 218CV02718SHMDKV, 2020 WL 4283279, at *5 (W.D. Tenn. Apr. 6, 2020), *aff'd*, No. 2:18-CV-02718, 2020 WL 4015476 (W.D. Tenn. July 16, 2020); *Stokes*, 2006 WL 6686584, at *3. Here, PCA sent out Rule 34 requests for production to most of the defendants. The parties agreed to a calendar order

indicating when Defendants' responses would be due. (Doc. 38.) But while those requests were still pending and before the responses were due—indeed, before Boulder Operations had even received the first set of discovery requests—PCA issued the subpoena to Defendants' accountant seeking essentially the same materials.

Sending out requests to a nonparty for the opposing side's own documents—while requests for the same material are still pending with that party—is unreasonably cumulative and it duplicates the efforts for all involved. And it is conceivably more convenient and less burdensome to obtain records from the source rather than the source's accountant who is not a party to the litigation. *See* Fed. R. Civ. P. 26(b)(2)(C). Instead of waiting for Defendants' responses to direct discovery, PCA attempted to circumvent the orderly procedure laid out in the parties' own agreed schedule and by the Federal Rules of Civil Procedure. Never mind that Defendants later objected to PCA's direct discovery. Objections to discovery are commonplace and there are procedures in place for when parties refuse to produce documents or otherwise cooperate. *E.g.*, Fed. R. Civ. P. 37. If PCA believes Defendants' objections to direct discovery lack merit, it must first raise that concern with Defendants in a good faith effort to resolve their differences without this Court's involvement. Fed. R. Civ. P. 37(a)(1). Failing that, PCA may then opt to reach out to this Court for assistance. Standing Order, II.A. If the parties are still at odds, then they may move to compel production. Fed. R. Civ. P. 37(a)(3)(B)(iv). What the rules of procedure do not countenance, however, is sidestepping the procedures laid out in Rule 34 and the applicable calendar order by subpoenaing a nonparty under Rule 45. *E.g., Stokes*, 2006 WL 6686584, at *3.

Since PCA's subpoena requests 1 through 4 constitute an attempt to circumvent Rule 34, the Court grants Defendants' motion to quash as it relates to those requests.

**C. PCA's request number 5 is legitimate.**

The above reasoning does not apply to PCA's request number 5 to Corwin, because that request is unique to Corwin—PCA had not asked Defendants for records of the financial transactions. Defendants contest the request on grounds of irrelevance. Although Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena, courts have held that the scope of discovery for subpoenas is the same as the scope of discovery under Rule 26. *Hendricks*, 275 F.R.D. at 253. And, when the subpoena is directed at a nonparty, the party moving to quash must make more than a conclusory assertion of an interest or privilege. *Santiago v. Meyer Tool, Inc.,* No. 1:19-CV-32, 2020 WL 247376, at *2 (S.D. Ohio Jan. 16, 2020). If the subpoena seeks documents that are relevant on their face, the party resisting discovery has the burden to show why the documents are not actually relevant. But when relevance is not apparent on the face of the request, the party seeking discovery must show why the requested documents are relevant. *Hendricks*, 275 F.R.D. at 253 (citing *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)).

Request number 5 seeks both tax documents and internal financial records.

*Tax documents.* In contesting the subpoena to Corwin, Defendants rely on Rule 45(d)(3)(B), which permits a court to quash or modify a subpoena when it requires the disclosure of confidential commercial information. In their view, the questions in this case are whether they owe money to PCA and, if so, how much. They maintain that their

7

commercially sensitive information has no bearing on the claims or defenses in this case.

Tax returns are not per se privileged from disclosure. *DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236, 1240 (6th Cir. 1989); *Bricker v. R & A Pizza, Inc.*, No. 2:10-CV-278, 2011 WL 1990558, at *2–3 (S.D. Ohio May 23, 2011). But they are confidential. *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 734 (6th Cir. 2006). And, when confidential documents, such as tax returns, are at issue, "a subpoena issued to a third party, rather than the defendant, is given careful scrutiny." *United States v. Gammo*, 428 F. Supp. 2d 705, 708 (E.D. Mich. 2006) (citing *Monumental Life Insurance*, 440 F.3d at 735-36).

PCA claims that Defendants' tax returns are relevant to their affirmative defenses. It claims that, if Defendants included PCA's invoices and the amounts on their tax returns, then they cannot argue that PCA's invoices are invalid. PCA "suspects" that Defendants reported the invoice amounts as deductible expenses, which would constitute an admission that the invoices were due and owed.

The issues in this case pertain to contracts between Defendants and PCA. It is not a case where either party's income is at issue. When determining whether tax returns are relevant to the claims and defenses in a case, district courts typically find tax turns relevant when a party's income is in issue (such as in a lost wages claim). *Bricker*, 2011 WL 1990558, at *3 (collecting cases). Here, however, the question is whether and how a contract or contracts govern these parties' dealings with each other. PCA fails to show why Defendants' tax returns would be relevant to the question of whether they breached contractual obligations they owed to PCA. *See Mehmedi v. La Dolce Vita Bistro*, LLC, No. 1:10 CV 1591, 2011 WL 13160124, at *2 (N.D. Ohio Aug. 9, 2011).

8

For that reason, the Court grants the motion to quash as it relates to requests for tax returns, payroll records, or related tax documents in request number 5.

*Internal financial records*.  Defendants make the same argument regarding their internal financial records as they did with their taxes.  They ask the Court to use its authority under Rule 45(d)(3)(B) to prevent the disclosure of their confidential commercial information, arguing that their internal financial records have no bearing on PCA's claims or Defendants' defenses.  They argue that, regardless of what the subpoenaed documents show, they will not make PCA's claims or their own defenses more or less likely.  They group the financial records with the tax returns, claiming that financial records have the same degree of confidentiality as tax returns.

PCA responds that Defendants' internal financial records may show whether they "contemporaneously deemed" PCA's invoices as due and payable.  Those documents, PCA believes, may reveal whether Defendants "truly believed" there were problems with PCA's invoices, as they maintain in their defenses (*see* Answer at 23, Doc. 9 Pg. ID 165), and whether they held funds in trust to eventually pay the invoices once the dispute were resolved.  If they did not hold the invoiced amounts in trust, PCA argues, then this fact would undermine Defendants' assertion that there were "issues" with PCA's invoices.

Rule 45 permits a court to quash a subpoena seeking confidential business information.  *State Farm Mut. Ins. Co. v. Policherla*, No. 08-13939, 2009 WL 2170183, at *3–4 (E.D. Mich. July 20, 2009).  With respect to confidentiality, however, courts generally distinguish between tax documents and financial documents.  *Compare Monumental Life Ins.*, 440 F.3d at 734 (recognizing that tax information is confidential) *with United States v.*

*Miller*, 425 U.S. 435, 442 (1976) (financial instruments and documents are not confidential communications). Thus, courts recognize that "[t]here is no inherent privacy right in financial information such that the Court is required by Rule 45 to quash a subpoena." *Simonoff v. Saghafi*, No. 1:17 CV 2574, 2018 WL 11306069, at *2 (N.D. Ohio May 18, 2018). So, when addressing motions to quash, federal courts commonly place the burden on the party claiming the privilege of avoiding disclosure. *E.g., Policherla*, 2009 WL 2170183, at *3. If that party shows that the information falls into a protected category and that disclosure may be harmful, then the burden shifts to the requesting party to establish relevance and the need for the information. *Id.* The court then weighs the parties' respective interests. *Id.*

PCA has articulated why certain of Defendants' financial records are relevant. Defendants' records of financial transactions between themselves and PCA are likely to show a course of conduct that is relevant to the breach of contract issues—and, specifically, to Defendants' defenses that the problem lied with PCA's invoices. Information on how Defendants handled prior invoices, for instance, may tend to show whether their defenses are more or less likely to have merit.

Defendants have not identified any specific harm they would experience if Corwin complied with the subpoena. They lean instead on a favorable comparison of financial records to tax documents. But that comparison is at odds with courts' recognition that the degree of confidentiality owed to financial records is not the same as is owed to tax returns. *Compare Monumental Life Ins.*, 440 F.3d at 734 *with Miller*, 425 U.S. at 442. *See also Simonoff*, 2018 WL 11306069, at *2; *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*,

10

No. 1:11-CV-0851, 2013 WL 146362, at *6 (S.D. Ohio Jan. 14, 2013).  On balance, then, PCA's show of relevance and need outweighs any harm Defendants might suffer.

Accordingly, the Court denies Defendants' motion to quash as it relates to financial transactions, including payment records, cash receipts, accounting records, and canceled checks in request number 5.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

11