IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| PCA-CORRECTIONS, LLC., d/b/a PCA Pharmacy, | : : : | Case No. 1:20-cv-428 |
| | : : | Judge Matthew W. McFarland |
| Plaintiff, | : : | |
| v. | : : | |
| AKRON HEALTHCARE LLC, et al., | : : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANT SAMUEL GOLDNER'S MOTION TO DISMISS**
**(Doc. 84)**

This case is before the Court on Defendant Samuel Goldner's motion to dismiss. (Doc. 84). Plaintiffs have responded in opposition and the deadline for Goldner's reply brief has expired. For the reasons explained below, the Court **DENIES** the motion to dismiss.

## FACTS

### A. Relevant Procedural Background

Plaintiff PCA-Corrections, LLC, d/b/a PCA Pharmacy, filed this lawsuit in May 2020. (Doc. 1.) Motions practice and a stay for mediation followed. In July 2021, PCA sought leave to amend the complaint and, among other things, add two related entities as plaintiffs and add Defendants' owners, Ariel Fein and Samuel Goldner, as defendants. (Doc. 65.) This Court granted leave to amend. (Doc. 70.) In October 2021, PCA filed its amended complaint which included Goldner as a defendant. (Doc. 71.)

1

Defendant Goldner now moves to dismiss the amended complaint as asserted against him. (Doc. 84.) The other defendants in this case are 17 Skilled Nursing Facilities ("Facilities"); a holding company, Boulder Operations Holdings LLC aka Reach LTC Ohio; and Ariel Fein. Goldner is the only defendant moving for dismissal at this stage.

### B. Relevant Factual Allegations

PCA provides pharmacy goods and services to residents of long-term care and skilled nursing facilities. It is what is known as an "under arrangements" provider. Such a provider is a third party brought in by a facility to provide certain goods and services to the facility's patients. An "under arrangements" provider may not directly bill Medicare for the goods and services it provides. So it relies on the facility for payment of those goods and services. And, in turn, the facility makes claims to Medicare for payment. (First Amended Complaint (FAC), Doc. 71, ¶¶ 29-30.)

In December 2018, PCA entered into a Pharmacy Services Agreement with "Boulder Healthcare" and the 17 Facilities named as defendants. (*Id.* at ¶¶ 1, 40-41.) Under that agreement, PCA provided pharmacy goods and services to the Facilities. (*Id.* at ¶ 1.) Around the same time, Defendant Goldner and others secured over $160 million in financing to buy the facilities. This group organized special-purpose entities for each Facility. The first kind of entity held the Medicare provider agreement and other credentials necessary to operate and obtain Medicare payment. The other kind of entity—the "Facility Propcos"—held the ownership of the property and buildings in which each Facility operated. (*Id.* at ¶¶ 31, 32.)

The group also created a holding company, Boulder Operations, to act as the sole

2

member of each Facility Defendant. (*Id.* at ¶ 33.) In 2019, Boulder Operations came under the full ownership of Boulder FG Holdings LLC, a company which Goldner owned, along with Ariel Fein. (*Id.* at ¶¶ 36, 59.) Finally, the group created a separate holding company—Boulder Property Holdings LP—to serve as the sole member of the Facility Propcos. The general partner of Boulder Property Holdings LP was yet another different company, Boulder Property Holdings GP LLC. (*Id.* at ¶ 37-38.)

Despite the complexity of these corporate structures, Defendants allegedly ignored the formalities that should have been in force to keep all of these legal entities distinct. (*Id.* at ¶ 39.)

In July 2019—after Boulder FG Holdings LLC assumed ownership of Boulder Operations—Goldner and Fein affirmed the continuity of the Services Agreement under their ownership. (*Id.* at ¶¶ 59, 63.) They told PCA that Boulder Operations would not be able to make payment on PCA's invoices in July, but that it would make payments later. (*Id.* at ¶ 67.) And Boulder Operations did in fact make payments later to PCA for certain past-due balances under the Service Agreement predating July 2019. (*Id.* at ¶ 69.) But Defendants failed to pay PCA's invoices issued in and after July 2019. (*Id.* at ¶ 70.) Almost a year passed. On May 1, 2020, General Counsel of Boulder Operations wrote to PCA's attorney declaring that Boulder Healthcare was transitioning its facilities to another pharmacy, effective immediately. Outstanding charges for pharmacy-related goods and services were left unpaid. (*Id.* at ¶ 72.)

PCA brought this lawsuit. It alleges that the Facility Defendants received reimbursement from Medicare for the goods and services PCA provided. But, instead,

of using those funds to pay PCA, the Facility Defendants transferred those funds to Boulder Operations, and then to Goldner and Fein. (*Id.* at ¶¶ 76-77.)

## ANALYSIS

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. R. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in the complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court accepts a complaint's factual allegations as true; but this presumption of truth does not extend to its legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, surviving a motion to dismiss is a matter of pleading sufficient factual content. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)). A claim for relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678. That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield*, 727 F.3d at 502. A complaint that lacks such plausibility warrants dismissal. *Iqbal*, 556 U.S. at 678.

Plaintiffs advance claims against Goldner for breach of contract for both failure to pay and improper termination (counts 1 and 2), promissory estoppel (count 3), unjust enrichment (count 4), tortious interference with contract (count 5), account stated (count 6), and fraudulent inducement (count 7).

Goldner moves to dismiss the complaint as against himself. He claims that Plaintiffs fail to include any allegations that he was a party to an agreement with Plaintiffs. The attached Service Agreement, he claims, contains no reference to himself.

4

He claims that the amended complaint itself concedes that it was not until six months after the Service Agreement was executed that he came into the picture. Moreover, he argues that no allegation claims there was any kind of accord or modification of the Service Agreement whereby Goldner assumed the obligations of the Service Agreement. All of this, according to Goldner, means that Plaintiffs cannot support any claim of their claims against him.

*Breach of contract and account stated.* In support of their claims, Plaintiffs point to their allegations that Goldner affirmed the ongoing application of the Services Agreement. (*See* FAC, Doc. 71, ¶¶ 62-70.) Goldner failed to file a reply brief and thus does not explain why the allegations as they are fail to state a claim. Accepting the factual allegations as true, Plaintiffs have stated plausible claims for relief under a breach of contract theory. The Services Agreement constitutes a contract and Plaintiffs allege that Goldner and Fein affirmed the continuing application of that contract, following their purchase of Boulder Operations.

Furthermore, PCA delivered its invoices to the Facility Defendants, which were owned, even if through less-than-crystal clear corporate relationships, by Goldner. But Goldner allegedly never disputed the accuracy of the invoices. Plaintiffs have therefore also plausibly stated a claim for account stated. *AJ Amatore & Co. v. Sebastiani*, 149 N.E.3d 136, 141 (Ohio Ct. App. 2019) ("Assent to the correctness of the balance may occur from the failure to object within a reasonable time to the bill.").

*Promissory estoppel.* Goldner makes the dubious argument that, without an agreement between Plaintiffs and himself, the promissory estoppel claim cannot be

5

maintained, because there needs to be an "underlying claim" to support a promissory estoppel claim. (Doc. 84, Pg. ID 2817.) He cites no legal support and is, in fact, quite mistaken. The existence of a written contract is not only not a prerequisite to a promissory estoppel claim; a written agreement *bars* an individual from bringing a promissory estoppel claim. *Manno v. St. Felicitas Elementary Sch.*, 831 N.E.2d 1071, 1077 (Ohio Ct. App. 2005).

The elements to making a promissory estoppel claim are familiar: (1) a clear and unambiguous promise was made; (2) upon which it would be reasonable and foreseeable for the party to rely; (3) actual reliance on the promise; and (4) the party was injured as a result of the reliance. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 59 N.E.3d 758, 768–69 (Ohio Ct. App. 2016). Plaintiffs have made allegations that suffice to make a prima facie claim of promissory estoppel. Goldner and Fein allegedly informed PCA that it would make payments following Boulder Operations' assumption of ownership of the Facilities. (FAC, Doc. 71, ¶¶ 62-67.) PCA continued to fill the Facilities' orders in reliance on Goldner and Fein's assurance. (*Id.* at ¶ 68.) Indeed, Boulder Operations paid PCA for past-due balances under the Services Agreement predating July 2019. (*Id.* at ¶ 69.) Yet Defendants failed to pay PCA's invoices moving forward, resulting in damages. (*Id.* at ¶¶ 72, 76-79.) Thus, Plaintiffs have made a plausible claim of promissory estoppel.

*Unjust enrichment.* To state a claim for unjust enrichment, a plaintiff must allege facts supporting (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *HAD Ents. v.*

6

*Galloway*, 948 N.E.2d 473, 477 (Ohio Ct. App. 2011).

Goldner claims Plaintiffs cannot maintain a claim against him based on the theory that he received a benefit from a third-party. But this argument seeks to dismiss the claim based on facts not yet before the Court. As it stands, Plaintiffs have alleged that Defendants knowingly benefited from Medicare reimbursements, which were tendered in exchange for the goods and services PCA provided. (*E.g.*, FAC, Doc. 71, ¶ 76.) At this stage, it is plausible that, especially given the alleged affirmance by Goldner of the continuity of the Services Agreement, it would be unfair for Goldner to retain those benefits. Accordingly, Plaintiffs have stated a claim for unjust enrichment.

*Tortious interference with contract.* The elements of tortious interference with contract are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 923 (S.D. Ohio 2017) (quoting *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999)).

In challenging the tortious interference claim, Goldner advances a similar theory as he does against the breach of contract claims, namely, that there was no separate service agreement made between Plaintiffs and individual Defendants after the sale of Boulder Operations. So Goldner limits his attack to the first element, the existence of a contract. But, again, this fails to justify dismissing the claim, because Plaintiffs have alleged that Goldner affirmed the ongoing effect of the original Services Agreement. As such, Plaintiffs have stated a claim for tortious interference with contract.

7

*Fraudulent inducement.* The elements of fraudulent inducement are: (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to its truthfulness that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance. *Brownfield Restoration Grp., LLC v. Trickett*, 122 N.E.3d 570, 577 (Ohio Ct. App. 2018). Fraud claims carry a heightened pleading requirement. Fed. R. Civ. P. 9(b). They must be stated with particularity. *Id.; Smith v. Gen. Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021). To satisfy Rule 9(b), a plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury.

These elements are met here.

Plaintiffs allege that, on July 1, 2019—the day Goldner and Fein assumed full ownership of Boulder Operations—a PCA representative spoke with Goldner and Fein. Goldner and Fein requested that PCA continue providing goods and services. In exchange, Boulder Operations would continue paying invoices as they came due. (FAC, Doc. 71, ¶ 131.) Because the provision of goods and services in exchange for payment was the fundamental point of the Services Agreement, assurance that the status quo would continue was material. Goldner and Fein in time took the position that the Services Agreement *did not* bind Boulder Operations, calling into question the truthfulness of their prior representation. Such an assurance plausibly had the effect of

8

causing PCA to continue providing goods and services. And, PCA justifiably relied on that representation. As a result of the change in position, PCA's invoices went unpaid. These allegations, as they stand, suffice to clear the hurdle of advancing a plausible claim of fraudulent inducement. These allegations cover each element of a fraudulent inducement claim and do so with satisfactory particularity under Rule 9(b).

Accordingly, the Court denies Defendant Goldner's motion to dismiss.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND
